**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOHN CONRAD CHEEKS, | : |
| | : |
| Plaintiff, | :  Civil Action No.:   24-2724 (RC) |
| | : |
| v. | :  Re Document Nos.:   11, 13, 14, 21 |
| | : |
| POWERBALL LOTTERY, | : |
| | : |
| Defendant. | : |

## <u>MEMORANDUM OPINION</u>

### GRANTING DEFENDANT'S MOTION TO DISMISS

### I. INTRODUCTION

Plaintiff John Conrad Cheeks filed this lawsuit *pro se* against Defendant, the Florida Lottery, alleging that Defendant failed to pay Cheeks the Powerball Lottery grand prize of $320,600,000 despite his lottery ticket matching the numbers displayed on the DC Lottery's website. The Florida Lottery moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b) for lack of personal jurisdiction, insufficient process, insufficient service of process, and failure to state a claim. The Court determines that Mr. Cheeks has failed to establish that this Court maintains personal jurisdiction over Defendant, and that the case must therefore be dismissed.[1]

---

[1] The Florida Lottery's response to the Complaint was initially due on November 1, 2024. That day, Cheeks filed a motion for default judgment, arguing that the Florida Lottery failed to respond to the Complaint. ECF No. 11. But that same day, the Florida Lottery moved for an extension of time to respond to the Complaint, ECF No. 10, which extension the Court granted on November 6, 2024. On November 12, 2024, Cheeks filed a motion for leave to file documents to support his claim and default judgment motion. ECF No. 13. Cheeks's motion for leave, ECF No. 13, is GRANTED, and the Court will consider the exhibits Cheeks filed in addition to his pleadings in resolving the present motion to dismiss. But because the Court granted Defendant's timely request for an extension, and Defendant timely filed this motion to

## II.  FACTUAL BACKGROUND

On September 24, 2024, Cheeks filed his *pro se*[2] Complaint against the Florida Lottery.[3] *See* Compl., ECF No. 1.  The Complaint names one defendant, "Powerball Lottery," and provided the address for the Florida Lottery in Tallahassee, Florida.  *Id.* at 2, 4; Pl.'s Notice of Errata, ECF No. 4.  Cheeks appears to assert that this Court has diversity jurisdiction, 28 U.S.C. § 1332(a)(1), alleging that Cheeks is a citizen of Washington, D.C., that Defendant is incorporated under the laws of the State of Florida and has its principal place of business in Tallahassee, Florida, and that the amount in controversy—$320,600,000—exceeds $75,000.  Compl. at 3–4.  Cheeks personally sent the Summons and Complaint to the Florida Lottery by USPS Certified Mail.  *See* Pl.'s Affidavit of Service, ECF No. 5.

In his Complaint, Cheeks alleges that he purchased a Powerball Lottery ticket from a licensed retail vendor in Washington, D.C. on January 6, 2023.  Compl. at 6; Pl.'s Resp. Def.'s Mot. Dismiss ("Pl.'s Opp'n") at 1, ECF No. 16.  He further alleges that on January 7, 2023, the Florida Lottery drew numbers that matched his ticket, thereby entitling him to the grand prize.  Compl. at 4.  According to Cheeks, the Florida Lottery "issued Powerball Lottery numbers to the D.C. Office of Lottery and Gaming as the winning numbers" to be posted on the DC Lottery's website, which Cheeks accessed to learn that he appeared to have won.  Compl. at 6; Ex. 2 to

---

dismiss, Defendant has not "failed to plead or otherwise defend."  *See* Fed. R. Civ. P. 55(a).  Cheeks's premature motion for default judgment, ECF No. 11, is therefore DENIED.

[2] After all relevant briefing, an attorney entered an appearance on Cheeks's behalf.  ECF No. 22.  Because Cheeks filed his submissions *pro se*, the Court will still construe them liberally.  *See Frank v. Ridge*, 310 F. Supp. 2d 4, 5 n.1 (D.D.C. 2004).

[3] Cheeks's Complaint originally named "Powerball et al." as defendants, *see* ECF No. 1, but he later filed a Notice of Errata naming one defendant, "Powerball Lottery," ECF No. 4.  In his response to Defendant's Motion to dismiss, Cheeks captioned his response to name "Florida Powerball Lottery" as the defendant.  Pl.'s Resp. Def.'s Mot. Dismiss ("Pl.'s Opp'n") at 1, ECF No. 16.  For clarity, the Court refers to Defendant as "the Florida Lottery."

Pl.'s Mot. File Supporting Docs., ECF No. 13-1.  Rather than pay Cheeks, he alleges that the Florida Lottery later used the prize money that was due to him to pay out a Powerball Jackpot prize of $1,080,000,000 to a different winner on July 19, 2023.  Compl. at 6.  As a result, Cheeks sued, seeking payment of the January 7, 2023 grand prize amount of $320,600,000, plus interest, and $1,080,000,000 for damages from "using [his] grand prize amount to advance a larger grand prize."  *Id.* at 4.

In response, the Florida Lottery moved to dismiss the Complaint for lack of personal jurisdiction, insufficient process, insufficient service of process, and failure to state a claim.  Def.'s Mot. Dismiss ("Def.'s Mot."), ECF No. 14.  The Florida Lottery argues that the proper defendant, if any, would be the Multi-State Lottery Association ("MUSL"), "an unincorporated Iowa non-profit association, owned and managed by its state lottery members plus the lotteries of the District of Columbia and Puerto Rico."  Def.'s Mot. at 5.  Defendant explains that though Powerball drawings occur at the Florida Lottery's "draw studio in Tallahassee, Florida," Powerball is a game developed and overseen by MUSL.  *Id.*  While expressing some uncertainty over whether Cheeks intended to serve the Florida Lottery, it responds and seeks dismissal of this case, arguing that: (1) Cheeks failed to allege conduct by the Florida Lottery related to the District of Columbia that would make the Florida Lottery subject to this Court's jurisdiction, *id.* at 7–10; (2) Cheeks failed to properly serve the Florida Lottery, a state agency, when he personally mailed the Summons and Complaint, *id.* at 10–11; and (3) Cheeks failed to state a claim to relief, as he failed to identify "any contractual or statutory obligations that the Lottery allegedly breached," *id.* at 12–14.

Cheeks's two-page response does not address the Florida Lottery's arguments directly, but was filed with exhibits, including what appears to be a Declaration submitted by the D.C.

Office of Lottery and Gaming ("OLG"), a defendant in a separate case filed in the Superior Court of the District of Columbia. *See* Ex. 1 to Pl.'s Opp'n, ECF No. 16-1. In that exhibit, the declarant states that the numbers Cheeks saw displayed on the DC Lottery's website were "test numbers" that were inadvertently posted by one of the OLG's contractors to the live, public website, rather than the private, developmental website. *Id.* at 2. The Declaration also explains that the numbers Cheeks saw were posted on January 6, 2023, and thus could not have been the numbers drawn on January 7, 2023. *Id.*

### III. LEGAL STANDARD

#### A. *Pro Se* Plaintiff

Courts construe a *pro se* complaint liberally and hold it "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). A court may thus "examine other pleadings to understand the nature and basis of . . . *pro se* claims" as alleged in a complaint. *Gray v. Poole*, 275 F.3d 1113, 1115 (D.C. Cir. 2002). Nevertheless, a *pro se* plaintiff is not excused from adhering to the applicable procedural rules and must "plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" *Atherton v. D.C. Off. of the Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). Accordingly, a court "need not accept inferences unsupported by the facts alleged in the complaint or 'legal conclusions cast in the form of factual allegations.'" *Kaemmerling v. Lappin*, 553 F.3d 669, 677 (D.C. Cir. 2008) (quoting *Henthorn v. Dep't of Navy*, 29 F.3d 682, 684 (D.D.C. 1994)).

## B. Rule 12(b)(2)

"[W]hen personal jurisdiction is in question, a court must first determine that it possesses personal jurisdiction over the defendants before it can address the merits of a claim." *Kaplan v. Central Bank of the Islamic Republic of Iran*, 896 F.3d 501, 510 (D.C. Cir. 2018). On a Rule 12(b)(2) motion to dismiss, the plaintiff bears the "burden of establishing a factual basis for the exercise of personal jurisdiction over the defendant." *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990). To meet his burden, a plaintiff "must make a *prima facie* showing of the pertinent jurisdictional facts." *First Chicago Int'l v. United Exchange Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988). A court will resolve factual disputes in the plaintiff's favor "[w]hen deciding personal jurisdiction without an evidentiary hearing," but it "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts." *Livnat v. Palestinian Auth.*, 851 F.3d 45, 57 (D.C. Cir. 2017) (quoting *Helmer v. Doletskaya*, 393 F.3d 201, 209 (D.C. Cir. 2004)). In addition to the pleadings, a court may consider evidence, such as "affidavits and other written materials." *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005).

"In a diversity case, the federal district court's personal jurisdiction over the defendant is coextensive with that of a District of Columbia court." *Helmer v. Doletskaya*, 393 F.3d 201, 205 (D.C. Cir. 2004); *see also* Fed. R. Civ. P. 4(k)(1)(A) (providing that service of a summons establishes personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located"). But a court's exercise of personal jurisdiction must still satisfy "the constitutional requirements of due process." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). "The Supreme Court has developed two distinct analyses of the circumstances in which a forum state may, consistent with due process, authorize its courts to exercise contact-based personal jurisdiction

5

over a defendant"—general jurisdiction and specific jurisdiction. *Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883, 888-89 (D.C. Cir. 2021). General jurisdiction "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit." *Id.* at 889 (quoting *Livnat*, 851 F.3d at 56). In contrast, specific jurisdiction "depends on an affiliatio[n] between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* at 888 (alteration in original) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

### IV.  ANALYSIS

The Florida Lottery moves to dismiss the Complaint, arguing that Cheeks has failed to establish this Court's jurisdiction over it. Def.'s Mot. at 7–10. Cheeks does not respond to this argument in his filings. To determine whether this Court has personal jurisdiction over the Florida Lottery, the Court first reviews whether it has general jurisdiction and next, whether it has specific jurisdiction. The Court agrees with the Florida Lottery that Cheeks has failed to establish that this Court maintains personal jurisdiction on either basis. As a result, the suit must be dismissed. Because the Court determines that it lacks personal jurisdiction, it does not address the Florida Lottery's arguments regarding insufficient process, insufficient service of process, and failure to state a claim to relief.

#### A.  General Jurisdiction

Cheeks has failed to establish that this Court maintains general jurisdiction over the Florida Lottery because he alleges no facts supporting that the Florida Lottery is "at home" in the District of Columbia. *See Goodyear*, 564 U.S. at 919. "A state court may exercise general jurisdiction only when a defendant is 'essentially at home' in the State." *Ford Motor Co. v.*

6

*Montana Eighth Judicial Dist. Court*, 592 U.S. 351, 358 (2021) (quoting *Goodyear*, 564 U.S. at 919). "Absent exceptional circumstances, that standard is met only in the corporation's 'formal place of incorporation or principal place of business.'" *Shatsky v. Palestine Liberation Org.*, 955 F.3d 1016, 1024 (D.C. Cir. 2020) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014)). And courts have extended this reasoning to other entities. *See, e.g.*, *Livnat*, 851 F.3d at 56 (applying the "essentially at home" test to the Palestinian Authority); *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 332 (2d Cir. 2016) ("*Daimler*'s reasoning was based on an analogy to general jurisdiction over individuals, and there is no reason to invent a different test for general personal jurisdiction depending on whether the defendant is an individual, a corporation, or another entity.").

Here, Cheeks's Complaint concedes that the Florida Lottery is organized under the laws of the State of Florida, and that its principal place of business is located there. Compl. at 4. The Florida Lottery argues that it "is an agency of the State of Florida; its operations, offices, and all relevant activities are exclusively located within the State of Florida." Def.'s Mot. at 8. Cheeks alleges no facts to the contrary. Thus, Cheeks has not established that the Florida Lottery is "at home" in the District of Columbia and subject to this Court's general jurisdiction. *See Goodyear*, 564 U.S. at 919.

### B. Specific Jurisdiction

Cheeks has similarly failed to establish that this Court maintains specific jurisdiction over the Florida Lottery because he alleges no relevant contacts between the Florida Lottery and the District of Columbia that would support an exercise of jurisdiction. As relevant here, the District of Columbia's long-arm statute extends to "a claim for relief arising from the [defendant's] transacting any business in the District of Columbia;" or the defendant's "causing tortious injury

in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia." D.C. Code § 13-423(a)(1), (4). Additionally, the Due Process Clause requires "'minimum contacts' between the defendant and the forum establishing that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice'" and that "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* (first quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); then quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). "[W]here the defendant deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and residents of the forum," such that he has purposefully "availed himself of the privilege of conducting business there, . . . it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 675–76 (1985) (internal quotation marks and citations omitted). But absent suit-related minimum contacts, a State may not assert specific jurisdiction over a nonresident defendant. *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014).

Here, the Florida Lottery argues that "the absence of forum-specific conduct precludes the exercise of specific jurisdiction under both the D.C. statute and the Due Process Clause." Def.'s Mot. at 10. The Court agrees. Cheeks has failed to establish the Florida Lottery's minimum contacts with the District of Columbia.

The Complaint mentions the District of Columbia in two contexts, but neither is sufficient. First, Cheeks alleges that he purchased his "Powerball lottery ticket . . . in

8

Washington D.C. for the drawing on Jan. 07, 2023." Compl. at 4. The exhibit containing Cheeks's lottery ticket also supports that it was issued by the DC Lottery, not the Florida Lottery. *See* Ex. 1 to Pl.'s Mot. File Supporting Docs., ECF No. 13-1. A plaintiff cannot establish personal jurisdiction over a defendant unilaterally; the cause of action "must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden*, 571 U.S. at 284 (quoting *Burger King*, 471 U.S. at 475). Thus, Cheeks's purchase of the ticket in the District of Columbia does not constitute a contact between the Florida Lottery and the District. Second, Cheeks alleges that the Florida Lottery "affirmed" and "issued Powerball lottery numbers to the D.C. Office of Lottery and Gaming as the winning numbers." Compl. at 4, 6. But as mentioned above, Cheeks submitted what appears to be a Declaration in support of the District of Columbia's OLG, a defendant in a separate case filed in a different court, in which the declarant states that the numbers Cheeks saw displayed on the DC Lottery's website were "test numbers" that were inadvertently posted by one of the OLG's contractors. *See* Ex. 1 to Pl.'s Opp'n at 2–3. Considering this additional evidence submitted by Cheeks, *see Mwani*, 417 F.3d at 7, the Court concludes that the Declaration refutes Cheeks's allegation of the Florida Lottery's involvement in the apparent mishap.

      Given Cheeks's status as a *pro se* litigant, the Court has also reviewed his other submissions for factual assertions of the Florida Lottery's forum-related conduct and found none. *See Gray*, 275 F.3d at 1115. In his response to the Florida Lottery's motion to dismiss, Cheeks mentions that "Florida Powerball Lottery" is a "Licensed Affiliate of the Multi State Lottery Association," and asserts that "Defendants are interlocked in a Massive Lottery Cover Up Scheme and are deceiving the Plaintiff with other known & unknown Actors who are building wealth enormously." Pl.'s Opp'n at 1. "'Conclusory statements' or a 'bare allegation of

9

conspiracy or agency' do not satisfy" Cheeks's burden to establish personal jurisdiction. *See Livnat*, 851 F.3d at 57 (quoting *First Chicago Int'l*, 836 F.2d at 1378–79).  Even considering Cheeks's other filings,[4] the Court concludes he has failed to establish that this Court maintains personal jurisdiction over the Florida Lottery.

## V. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (ECF No. 14) is **GRANTED**; Plaintiff's motion for default judgment (ECF No. 11) is **DENIED**; Plaintiff's motion for leave to file supporting documents (ECF No. 13) is **GRANTED**; and Plaintiff's motion for payment demand (ECF No. 21) is **DENIED**.

Dated:  June 6, 2025                                                                                                  RUDOLPH CONTRERAS
                                                                                                                              United States District Judge

---

[4] On January 22, 2025, Cheeks filed a motion titled, "Plaintiff's Motion for Payment Demand of Lottery Jackpot on January 07,[ ]2023 and Payment for Unjust Enrichment by Defendant Powerball of Florida and Known Actors with Unknown Actors of July 19,[ ]2023 Prize."  ECF No. 21.  This motion similarly lacks any allegations of the Florida Lottery's contacts with the District of Columbia.  Because this Court lacks personal jurisdiction over Defendant, this motion is also DENIED.